

MIN
MERS Telephone: (888) 679-6377

# Note

FHA Case No.

November 9, 2019          Trevose                          PA
*(Date)*               *(City)*                        *(State)*

419 May St
Mayfield, PA 18433
*(Property Address)*

1. **BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay U.S. $ 133,763.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is Freedom Mortgage Corporation

   I will make all payments under this Note in the form of cash, check or money order.

   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST.** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    4.375%.

   The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

3. **PAYMENTS**

   (A) **Time and Place of Payments.** I will pay principal and interest by making a payment every month.

   I will make my monthly payment on the 1st   day of each month beginning on January 1, 2020     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on December 1, 2049    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

   I will make my monthly payments at PO Box 6656, Chicago, IL  60680-6656
                                                                          or at a different place if required by the Note Holder.

   (B) **Amount of Monthly Payments.** My monthly payment will be in the amount of U.S. $      667.86    .

4. **BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

FHA Fixed Rate Note-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1/21/2015
VMP1R(PA) (1603).00
Page 1 of 3

5. **LOAN CHARGES.** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A) **Late Charge for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest.

   I will pay this late charge promptly but only once on each late payment.

   (B) **Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C) **Notice of Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   (D) **No Waiver By Note Holder.** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E) **Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

7. **GIVING OF NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS.** I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

FHA Fixed Rate Note-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1/21/2015
VMP1R(PA) (1603).00
Page 2 of 3

10. **UNIFORM SECURED NOTE.** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

11. **EFFECT OF SURVIVAL EVENTS.** For purposes of this Note, "Survival Event" is defined as follows:

(A)  any default described in Section 6(B) of this Note;

(B)  Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(C)  Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(D)  the Maturity Date as defined in this Note;

(E)  the entry of any judgment against me under this Note; and

(F)  the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)       _____ (Seal)
Earl P. Chubb, JR.            **-Borrower**   Danielle Y. Davies            **-Borrower**


_____ (Seal)       _____ (Seal)
                              **-Borrower**                                 **-Borrower**

*(Sign Original Only)*

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

**Loan Origination Organization:** Freedom Mortgage Corporation
**NMLS ID:** ▌▌▌
**Loan Originator:** Deborah Joyce Galinski
**NMLS ID:** ▌▌▌

FHA Fixed Rate Note-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1/21/2015
VMP1R(PA) (1603).00
Page 3 of 3

Pay to the order of

_____

without recourse
Freedom Mortgage Corporation

*Maria Gallucci*

Maria Gallucci
Corporate Secretary



Account Number ▮

Pool Number ▮

Investor Type     GNMA

**COLLATERAL**

Loan Number ▮

Borrower Name     Chubb JR

Borrower Address     419 May St Mayfield PA 18433

Collateral Barcode ▮

Collateral Location ▮       Control Number ▮

                                       Group Number

Collateral SAK ▮

**DOCUMENT**

Document SAK ▮

Document Code ▮

Doc Type Descript     SECI- SECURITY INSTRUMENT

Doc Notation     RO/L=MERS FREE MTG CORP



**This is a certification page**
***This page is now part of this legal document – DO NOT DETACH***



**Recording:**

| | |
|---|---|
| Recording Fees – ROD | 48.00 |
| Cover/Index Page | 2.00 |
| Parcel Certification | 30.00 |
| State Writ Tax | 0.50 |
| State JCS/Access to Justi | 40.25 |
| Affordable Housing | 13.00 |
| County Improvement Fee | 2.00 |
| ROD Improvement Fee | 3.00 |
| **Total:** | **138.75** |

**** NOTICE: THIS IS NOT A BILL ****

```
INSTRUMENT #:  201918353

Receipt#:
Clerk:     MRC
Rec Date:  11/15/2019 03:09:21 PM
Doc Grp:   M
Descrip:   MORTGAGE
Num Pgs:   22
Rec'd Frm: WORLD WIDE LAND TRANSFER

Party1:  CHUBB EARL P JR
Party2:  FREEDOM MTGE CORP
Town:    MAYFIELD BOROUGH
```

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office of Lackawanna County, Pennsylvania.



*Evelyn Rafalko McNulty*

Evelyn Rafalko McNulty
Recorder of Deeds

** Information may change during the verification process and may not be reflected on this page

```
Record and Return To:


ELECTRONICALLY RECORDED BY SIMPLIFILE
```

LACKAWANNA COUNTY
Certified Property Identification
MUNI: 900
Date: 11/15/2019
PIN: ███████████

Clerk: AN

LACKAWANNA COUNTY
Certified Property Identification
MUNI: 900
Date: 11/15/2019
PIN: ███████████

Clerk: AN

LACKAWANNA COUNTY
Certified Property Identification
MUNI: 900
Date: 11/15/2019
PIN: ███████████

Clerk: AN

**Prepared By:**
Freedom Mortgage Corporation
401 Rte 73 N,  30 Lake Center
Ste 115  Attn:  Rtl Collateral
Marlton, NJ 08053

**Return To:**
Freedom Mortgage Corporation,
P.O. Box 8001
Fishers, IN 46038-8001

**Premises:**
419 May St
Mayfield, PA 18433

# Mortgage

Parcel#: ███████████

FHA Case No.
███████████

MIN: ███████████

Refinance

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, 21 and 27. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A)  **"Security Instrument"** means this document, which is dated November 9, 2019    , together with all Riders to this document.

FHA Mortgage with MERS-Pennsylvania                                             9/30/2014
Bankers Systems™ VMP ®                                          VMP4N(PA) (1609).00
Wolters Kluwer Financial Services                                        Page 1 of 20

(B) **"Borrower"** is Earl P. Chubb, Jr. and Danielle Y. Davies, as joint tenants with right of survivorship

Borrower is the mortgagor under this Security Instrument.

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

(D) **"Lender"** is Freedom Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of The State of New Jersey
Lender's address is 907 Pleasant Valley Av Ste 3, Mount Laurel, NJ 08054

(E) **"Note"** means the promissory note signed by Borrower and dated November 9, 2019 . The Note states that Borrower owes Lender One Hundred Thirty Three Thousand Seven Hundred Sixty Three and 00/100
Dollars (U.S. $133,763.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than December 1, 2049 .

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

FHA Mortgage with MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services
9/30/2014
VMP4N(PA) (1609).00
Page 2 of 20

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Planned Unit Development Rider
☐ Other
☐ Rehabilitation Loan Rider

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

FHA Mortgage with MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1609).00
Page 3 of 20

**(Q)** **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

County                                    of Lackawanna                                        :
*(Type of Recording Jurisdiction)*            *(Name of Recording Jurisdiction)*
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of 419 May St
                                                                                        *(Street)*
Mayfield                                    *(City)*, Pennsylvania 18433        *(Zip Code)*
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services
9/30/2014
VMP4N(PA) (1609).00
Page 4 of 20

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as expressly stated otherwise in this Security Instrument or the Note, all payments accepted and applied by Lender shall be applied in the following order of priority:

   First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

FHA Mortgage with MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services
3/30/2014
VMP4N(PA) (1609).00
Page 5 of 20

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1609).00
Page 6 of 20

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1609).00
Page 7 of 20

Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1609).00
Page 8 of 20

Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1609).00
Page 9 of 20

Case 5:23-bk-01194-MJC    Doc 13-5    Filed 06/16/23    Entered 06/16/23 13:39:28    Desc
Loan documents    Page 15 of 40

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

3/30/2014
VMP4N(PA) (1609).00
Page 10 of 20

may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services
9/30/2014
VMP4N(PA) (1608).00
Page 11 of 20

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1609).00
Page 12 of 20

charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Lender agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

14. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services
3/30/2014
VMP4N(PA) (1609).00
Page 13 of 20

17. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding; (ii) reinstatement will preclude foreclosure on different grounds in the future; or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1609).00
Page 14 of 20

Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1609).00
Page 15 of 20

Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1609).00
Page 16 of 20

24. **Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. **Reinstatement Period.** Borrower's time to reinstate provided in Section 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. **Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

    (A) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

    (B) pay the amounts and take the actions required by Section 4 of this Security Instrument;

    (C) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

    (D) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

    (E) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

    (F) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

    (G) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 3 of this Security Instrument;

    (H) permit the collection and application of miscellaneous proceeds as required by Section 10 of this Security Instrument;

    (I) pay the fees required by Section 13 of this Security Instrument;

    (J) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

    (K) pay any collection expenses under Section 22 of this Security Instrument; and

    (L) pay interest at the rate payable from time to time under the Note.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1609).00
Page 17 of 20

"Survival Event" means any of the following:

(A) any default described in the Note;

(B) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(C) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 17 and 22 of this Security Instrument;

(D) the Maturity Date as defined in the Note;

(E) the entry of any judgment against Borrower under the Note; and

(F) the entry of any judgment under this Security Instrument.

**28. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**29. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1609).00
Page 18 of 20

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Earl P. Chubb, JR.                  -Borrower

_____ (Seal)
Danielle Y. Davies                  -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1609).00
Page 19 of 20

**Acknowledgment**

State of PA

County of Lackawanna

On 11/9/16, before me, Denise Millon

the undersigned officer, personally appeared

EARL P. Chubb JR ¢ Danielle y Davies

known to me, (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

Notary Public Denise Millon

My commission expires: 8/19/22

Commonwealth of Pennsylvania - Notary Seal
Denise Millon, Notary Public
Wayne County
My commission expires August 19, 2022
Commission number
Member, Pennsylvania Association of Notaries

**Certificate of Residence**

I, Kathryn Stewart, do hereby certify that the correct address of the within-named Lender is 1661 E Voorhees St, Suite C

Danville, IL 61834

Witness my hand this 9 day of November, 2019

*Agent of Lender*

**Loan Origination Organization:** Freedom Mortgage Corporation
**NMLS ID** ▮
**Loan Originator:** Deborah Joyce Galinski
**NMLS ID:** ▮

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1609).00
Page 20 of 20

## LEGAL DESCRIPTION

**FIRST PARCEL:**

All the surface or right of soil and in all those certain lots, pieces or parcels of land situate, lying, and being in the Borough of Mayfield, County of Lackawanna, and Commonwealth of Pennsylvania, bounded and described as follows:

BEGINNING at a point on the Northeast corner of Lot No. Ten (10) in Block Number Eighteen (18) as described and designated in a survey of the property of the Hillside Coal and Iron Company accompanied by a map thereof; thence along the westerly side of May Street, South twenty-nine (29) feet to a point; thence West seventy-five (75') feet to a point; thence, North Eight (8') feet to a point; thence, West seventy-five (75') feet to a point in the westerly side of said Lot No. Ten (10); thence North along this line Twenty-one (21') feet; thence East one Hundred Fifty (150') feet along the boundary of Lots No. Ten (10) and Eleven (11) to the point of beginning.

P.I.N. No.: ███████████

**SECOND PARCEL:**

ALL the surface or right of soil of and in all those certain lots, pieces or parcels of land situate, lying and being in the Borough of Mayfield, County of Lackawanna and Commonwealth of Pennsylvania, bounded and described as follows:

BEGINNING at the Westerly corner of Lot No. 3, Block No.18, said place of beginning also being in the Southeasterly line of Hill Street; thence in a Southeasterly direction along the Southwesterly line of said Lot No. 3, One Hundred Fifty (150') feet to the southerly corner thereof; thence Southwesterly along the Northwesterly line of Lot No. 10, Block No. 18, May Street, fifty (50') feet to the easterly corner of Lot No. 1, Hill Street; thence Northwesterly along the Northeasterly line of said Lot No. 1, One Hundred Fifty (150') feet to the Northerly corner thereof, which is in the Southeasterly line of aforesaid Hill Street; thence Northeasterly along said Hill Street, fifty (50') feet to the place of beginning.

CONTAINING an area of seven thousand five hundred (7500) square feet of land more or less, being Lot No. 2 Block No.18 Hill Street on map of the Hillside Coal & Iron Company.

EXCEPTING AND RESERVING out of the Second Parcel hereof, the Southerly One-Half of Lot No. 2 Block 18 Hill Street, being Twenty-five (25') feet in front on Hill Street, the same in rear and One Hundred fifty (150') feet in depth, which was conveyed by Bartek Bilski, et ux. to John Mizianty, et ux., said Deed being recorded in Lackawanna County in Deed Book 578 at page 325.

P.I.N. No. ██████████

**THIRD PARCEL:**

ALL the surface or right of soil of and all those certain lots, pieces, or parcels of land situate, lying and being in the Borough of Mayfield, County of Lackawanna and Commonwealth of Pennsylvania, bounded and described as follows:

BEING the Southerly One-Half (1/2) of Lot No.2 Block 18, Hill Street and being Twenty-five (25') feet in front on Hill Street, the same in rear and one hundred fifty (150') feet in depth.

P.I.N. No. ██████████

# AMTRUST TITLE INSURANCE COMPANY

## COMMITMENT

File No █████████

November 9, 2019      **SCHEDULE A**

1. Commitment Date: ~~September 26, 2019~~

2. Policy or Policies to be issued:             Amount

   (a)                               $
   Proposed Insured:

                                                133,763.00

   (b) ALTA Loan Policy (06-17-06), as modified by TIRBOP    $   ~~133,602.77~~
   Proposed Insured:
   **Freedom Mortgage Corporation, its successors and/or assigns
   as their interests may appear**

3. The estate or interest in the land described or referred to in this commitment and covered herein is Fee Simple and title thereto is at the effective date hereof vested in:

   **Earl P. Chubb, Jr., and Danielle Y. Davies, as joint tenants with right of survivorship**

   **BEING the same premises which Aaron Grzech and Katrina L. Grzech, his wife, by Deed dated June 2, 2011, and recorded June 10, 2011, in the Office of the Recorder of Deeds in and for the County of Lackawanna, Pennsylvania, as Instrument No. 201111567, granted and conveyed unto Katrina L. Grzech, in fee.**

   **ALSO BEING the same premises which Katrina L. Grzech, now by retaking of maiden name known as, Katrina L. Lawler, unmarried, by Deed dated April 20, 2018, and recorded April 23, 2018, in the Office of the Recorder of Deeds in and for the County of Lackawanna, Pennsylvania, as Instrument No. 201805886, granted and conveyed unto Earl P. Chubb, Jr., and Danielle Y. Davies, as joint tenants with right of survivorship, in fee.**

4. The land referred to in this commitment is described as follows:

   *For informational purposes only:*
   **419 May Street, Mayfield, PA 18433**
   **Lackawanna County, Pennsylvania**

                               ( END 100, 300 & 900 )

   **SEE CONTINUATION OF SCHEDULE A FOR LEGAL DESCRIPTION**

Countersigned:
**World Wide Land Transfer, Inc.**
**8 Neshaminy Interplex**
**Suite 117**
**Trevose, PA 19053**

By: _____
         Authorized Signatory

ALTA Commitment
Schedule A



Evie Rafalko McNulty
Lackawanna Recorder of Deeds
123 Wyoming Ave, Suite █████
Scranton, PA ██████

This is a certification page
***This page is now part of this legal document - DO NOT DETACH***



Recording:

| | |
|---|---:|
| Recording Fee ROD | $13.00 |
| Partial & Notice of Assessment | $0.00 |
| Cover/Index Page | $2.00 |
| Additional Names | $0.00 |
| Additional Page | $0.00 |
| Additional Acknowledgement | $0.00 |
| Additional Parcel | $0.00 |
| County Improvement | $2.00 |
| Parcel Identification | $30.00 |
| ROD Improvement Fee | $3.00 |
| State Writ Tax | $0.50 |
| Statement of Value | $0.00 |
| State JCS/Access to Justice | $40.25 |
| Affordable Housing | $0.00 |
| Additional References (Assgn., Assgn Mort.) | $0.00 |
| References (Satisfactions) | $0.00 |
| Local RTT Tax | $0.00 |
| State RTT Tax | -------------- |

Instrument #: ████████

Receipt #: ██████

Clerk: Carluccimr

Rec Date: 04/08/2021 11:07:19 AM

Num Pages: 2

Document Type: ASSIGNMENT OF MORTGAGE

Total: $90.75

Rec'd From: CSC ERECORDING

Party 1: CHUBB EARL P JR
Party 2: FREEDOM MORTGAGE CORP

****NOTICE: This is not a Bill.****

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office of Lackawanna County, Pennsylvania.



*Evie Rafalko McNulty*

Evie Rafalko McNulty
Recorder of Deeds

**Information may change during the verification process and may not be reflected on this page.

Record and Return To:

CSC ERECORDING
██ N ████████
LOGAN, UT 84321

**Record and Return To:**
Freedom Mortgage Corporation
Assignment of Mortgage Department
20 Lake Center Drive
Marlton, NJ 08053
Parcel Tax ID: [redacted]

**Property Address:**
**419 MAY ST MAYFIELD,
PA 18433**
Loan #: [redacted]
MIN: [redacted]
MERS Phone #: **(888) 679-6377**

LACKAWANNA COUNTY
Certified Property Identification
MUNI : 900
Date: April 7, 2021
PIN: [redacted]
Clerk: AN

LACKAWANNA COUNTY
Certified Property Identification
MUNI : 900
Date: April 7, 2021
PIN: [redacted]
Clerk: AN

LACKAWANNA COUNTY
Certified Property Identification
MUNI : 900
Date: April 7, 2021
PIN: [redacted]
Clerk: AN

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Freedom Mortgage Corporation, its successors and assigns , P.O. Box 2026, Flint, MI 48501-2026 (888) 679-6377,** by these presents does convey, assign, and transfer and set over to: **Freedom Mortgage Corporation, 907 Pleasant Valley Ave Ste 3, Mount Laurel, NJ 08054,** the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$133763.00** is recorded in the State of **PENNSYLVANIA**, County of Lackawanna Official Records, dated **11/09/2019** and recorded on **11/15/2019**, as Instrument No. **201918353** in Book No. **N/A**, at Page No. **N/A**

Original Mortgagor: **EARL P. CHUBB, JR. AND DANIELLE Y. DAVIES, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP**

Original Mortgagee: **Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Freedom Mortgage Corporation, its successors and assigns**

Municipality: **Borough of Mayfield**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC is at 1901 E Voorhees Street, Suite C, Danville, IL 61834, P.O. BOX 2026, FLINT, MI 48501-2026

Date: **04/07/2021.**

**Mortgage Electronic Registration Systems, Inc., as
mortgagee, as nominee for Freedom Mortgage
Corporation, its successors and assigns**

By: _James K. Minshall_
Name: **James K. Minshall**
Title: **Assistant Secretary**

STATE OF **New Jersey**
COUNTY OF **BURLINGTON** } s.s.

On **04/07/2021**, before me, **Brenda Rostrom**, Notary Public, personally appeared **James K. Minshall, Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Freedom Mortgage Corporation, its successors and assigns** , personally known to me (or proved to me the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he/they executed the same in her/his/their authorized capacity(ies), and that by her/his/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_Brenda Rostrom_
Notary Public: **Brenda Rostrom**
My Commission Expires: **01/29/2022**

BRENDA ROSTROM
NOTARY PUBLIC OF NEW JERSEY
Comm. [redacted]
My Commission Expires 1/29/2022

Drafted By: **Lateef Smith**
I do certify that the precise address of **Freedom Mortgage Corporation** is **907 Pleasant Valley Ave Ste 3, Mount Laurel, NJ 08054**

Attested By:

_James K. Minshall_

**James K. Minshall**, Assistant Secretary



This is a certification page
***This page is now part of this legal document - DO NOT DETACH***



| Recording: | |
| --- | --- |
| Recording Fee ROD | $13.00 |
| Partial & Notice of Assessment | $0.00 |
| Cover/Index Page | $2.00 |
| Additional Names | $0.00 |
| Additional Page | $10.00 |
| Additional Acknowledgement | $0.50 |
| Additional Parcel | $1.00 |
| County Improvement | $2.00 |
| Parcel Identification | $30.00 |
| ROD Improvement Fee | $3.00 |
| State Writ Tax | $0.50 |
| Statement of Value | $0.00 |
| State JCS/Access to Justice | $0.00 |
| Affordable Housing | $0.00 |
| Additional References (Assgn., Assgn Mort.) | $0.00 |
| References (Satisfactions) | $0.00 |
| Local RTT Tax | $0.00 |
| State RTT Tax | $0.00 |
| Total: | $62.00 |

Instrument #: ███

Receipt #: ███

Clerk: Greenwoodl

Rec Date: 11/03/2021 10:55:25 AM

Num Pages: 10

****NOTICE: This is not a Bill.****

Document Type: MORTGAGE MODIFICATION/AGREEMENT

Rec'd From: MORTGAGE CONNECT - LOAN MOD - TX

Party 1: CHUBB EARL P JR
Party 2: FREEDOM MORTGAGE CORP

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office of Lackawanna County, Pennsylvania.



*Evelyn Rafalko McNulty*

Evie Rafalko McNulty
Recorder of Deeds

**Information may change during the verification process and may not be reflected on this page.

Record and Return To:

MORTGAGE CONNECT - LOAN MOD - TX
███ CLUBHOUSE DR
CORAOPOLIS, PA 15108-3195

LACKAWANNA COUNTY
Certified Property Identification
MUNI: ▮
Date: Nov. 3, 2021
PIN : ▮
Clerk: AN

**Instrument #:** ▮
**Rec Date: 11/03/2021 10:55 AM  Page 2 of 10**

LACKAWANNA COUNTY
Certified Property Identification
MUNI: 900
Date: Nov. 1, 2021
PIN : ▮
Clerk: AN

Investor Loan ▮

**Recording Requested By:**
Freedom Mortgage Corporation
907 Pleasant Valley Avenue
Mount Laurel, NJ 08054

LACKAWANNA COUNTY
Certified Property Identification
MUNI: 900
Date: Nov. 3. 2021
PIN ▮
Clerk: AN

**After Recording Return To:**
Freedom Mortgage Corporation C/O:
Mortgage Connect Document Solutions
6860 North Argonne Street, Unit A
Denver, CO 80249
APN/Tax ID ▮
Recording Number ▮

Date of Document: 10/13/21

This document was prepared by <u>Freedom Mortgage Corporation,</u> _____

_____**Space Above This Line For Recording Data**_____

**Original Principal Amount:** $133,763.00      **Loan Number:** ▮
**Unpaid Principal Amount:** $133,038.32      **FHA Loan Number:** <u>FR</u> ▮
**New Principal Amount:** $147,783.48
**Total Capitalized Amount:** $14,745.16

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") between **EARL P. CHUBB, JR. AND DANIELLE Y. DAVIES, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP** whose address is 419 MAY ST, MAYFIELD, PA 18433 ("Borrower" or "I") and **FREEDOM MORTGAGE CORPORATION** whose address is 907 Pleasant Valley Avenue, Mount Laurel, NJ 08054 ("Lender"), is effective <u>09/23/2021</u>, and amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), made by **EARL P. CHUBB, JR. AND DANIELLE Y. DAVIES, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP** to **MERS AS NOMINEE FOR FREEDOM MORTGAGE CORPORATION.** for $133,763.00 and interest, dated **11/09/2019** and recorded on Date **11/15/2019** in Book or Liber _____, at page(s) _____ or as Document/Instrument Number **201918353**, in the Records of **Lackawanna, PENNSYLVANIA**, and (2) the Note bearing the same date as and secured by the Security Instrument, which was entered into as security for the performance of the Note and encumbers the real and personal property described and defined in the Security Instrument as the "Property," located at **419 MAY ST MAYFIELD, PA 18433.** *See Exhibit A for Legal Description*

**Important Disclosures:** The Federal Housing Administration (FHA) requires that Lender provide you with information designed to help you understand the modified mortgage terms that are being offered to you. Lender is required to provide you with clear and understandable written

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "Borrower" or "I." For purposes of this document, words signifying the singular (such as "Borrower" or "I") shall include the plural (such as "Borrowers" or "we") and vice versa where appropriate.

Page 1

information about the terms, costs, and risks of the modified mortgage in a timely manner to enable Borrower to make informed decisions. This information is included below. Please read it carefully.

If my representations in Section 1 below continue to be true in all material respects, then this Loan Modification Agreement ("Agreement") will, as set forth in Section 3 below, amend and supplement (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined here have the meaning given to them in the Loan Documents. If there is more than one borrower or mortgagor executing this document, each is referred to as "I". Words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

This Agreement will not take effect unless the preconditions set forth in Section 2 below have been satisfied.

1.  **My Representations.** I certify, represent to Lender, and agree as follows:

    **A.** The Property has no more than four units.

    **B.** The Property currently has no materially adverse physical condition(s).

    **C.** I intend to continue to live in the Property as my primary residence.

    **D.** I do not have any other FHA-insured mortgage.

    **E.** If I received a discharge in a Chapter 7 Bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    **A.** Prior to the Modification Effective Date as set forth in Section 3 below, if Lender determines that any of my representations in Section 1 above are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and remedies provided by the Loan Documents.

    **B.** The Loan Documents will not be modified unless and until (1) Lender approves this Agreement and (2) the Modification Effective Date (as defined in Section 3 below) has occurred. In addition, Lender will not be obligated to modify the Loan Documents if I fail to meet any of the requirements under this Agreement.

3.  **The Modification.** If all of my representations in Section 1 above continue to be true in all material respects and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on 09/23/2021 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.

If I have failed to make any payments that are a precondition to this modification, this modification will not take effect.

**A.** The new Maturity Date will be 11/01/2051.

**B.** As of the Modification Effective Date, the new principal balance of my Note is $147,783.48 (the "New Principal Balance").

**C.** Interest at the fixed rate of 2.875% will begin to accrue on the New Principal Balance as of 11/01/2021 and my first new monthly payment on the New Principal Balance will be due on 12/01/2021. My fully amortizing payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|
| 30 | 2.875% | $613.14 | $300.78, may adjust periodically | $913.92, may adjust periodically | 12/01/2021 | 360 |

\* The escrow payments may be adjusted periodically in accordance with applicable law. Therefore, my total monthly payment may change accordingly.

The total monthly payment amount shown does not include the cost for any optional products that may be on the mortgage loan.

The terms in this Section 3.C. supersede any provisions to the contrary in the Loan Documents, including (but not limited to) provisions for an adjustable-or step-interest rate.

**D.** I will be in Default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

**E.** The interest rate set forth in Section 3.C. above shall apply even in the event of default and if the Loan Documents permitted a default rate of interest.

**4. Additional Agreements.** Lender and I agree to the following:

**A.** I authorize Lender to attach an Exhibit A to this loan modification, which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

**B.** All persons, or their authorized representative(s), who signed the Loan Documents have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the property has been transferred to one

Page 3

spouse in the divorce decree, meaning that the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender has waived this requirement in writing. This Agreement may be executed in separate counterparts, each of which shall be deemed an original.

C. This Agreement supersedes the terms of any modification, forbearance, trial modification payment plan, or loan workout plan that I previously entered into with Lender.

D. I will comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments, the amount of which may periodically change over the term of my Loan.

E. The Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect. Nothing in this Agreement satisfies or releases in whole or in part any of the obligations contained in the Loan Documents. Except as otherwise specifically provided in, and as expressly modified by, this Agreement, Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. On and after the Modification Effective Date, and notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules, or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice to, or demand on, me.

H. On and after the Modification Effective Date, Lender will allow the transfer and assumption of the Loan, including this Agreement, only as permitted under FHA guidelines. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. On and after the Modification Effective Date, any provision in the Note (or in any addendum or amendment to the Note) that allowed for the assessment of a penalty for full or partial prepayment of the Note, is null and void.

J. I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by

Page 4

Lender's procedures to ensure that the modified mortgage loan is in first-lien position and/or is fully enforceable upon modification. Under any circumstance and not withstanding anything else to the contrary in this Agreement, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

I will execute such other documents as may be reasonably necessary either to (1) consummate the terms and conditions of this Agreement or (2) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Lender may declare this Agreement void and of no legal effect upon notice of such error. If I sign a corrected Agreement, Lender will provide a copy of such Agreement to me. If I elect not to sign such corrected Agreement, at Lender's sole option, (x) the terms of the original Loan Documents shall continue in full force and effect and (y) the terms of the original Loan Documents will not be modified by this Agreement.

**K.** Lender may collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure all of this information and the terms of this Agreement by Lender to (1) any government entity that regulates Lender; (2) any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first-lien or subordinate-lien (if applicable) mortgage loan(s); (3) companies that perform support services for the FHA and (4) any HUD-certified housing counseling agency.

**L.** If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with Lender's request to execute, acknowledge, initial, and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced, Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents that Lender requests of me under this section shall be referred to as the "Documents". I will deliver the Documents within ten days after I receive Lender's written request for such replacement.

By SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Earl P Chubb Jr_

Earl P. Chubb, Jr.
(Must be signed exactly as printed)

████ ████ / 2021
Signature Date (MM/DD/YYYY)

_Danielle Y Davies_

Danielle Y. Davies
(Must be signed exactly as printed)

████████
Signature Date (MM/DD/YYYY)

_____ *[Space below this line for Acknowledgement]* _____

STATE OF _PC_

COUNTY OF _Lackawanna_

On the ___13___ day of ___Oct___ in the year ___2021___ before me, the undersigned, a Notary Public in and for said State, personally appeared Earl P. Chubb, Jr. and Danielle Y. Davies, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person or entity upon behalf of which the person or entity acted, executed the instrument.

WITNESS my hand and official seal.

_Lori L Sosa_
(Signature)                                                        (Notary Public Seal)
                              **(Please ensure seal does not overlap any language or print)**

Notary Public: _Lori L. Sosa_
                                            ed Name)

Notary commission expires: ████████

> Commonwealth of Pennsylvania-Notary Seal
> Lori L. Sosa, Notary Public
> Lackawanna County
> My commission expires September 15, 2023
> Commission Number ████

Page 6

**DO NOT WRITE BELOW THIS LINE.**
*******************************************************************************
THIS SECTION IS FOR INTERNAL USE ONLY

Freedom Mortgage Corporation
    By: Mortgage Connect Document Solutions, LLC, its attorney in fact

By: _____

Name: ~~Stephanie Casillas~~        __October 19th, 2021__
Title: **Attorney in Fact**        Date

_____ *[Space below this line for Acknowledgement]*_____

STATE OF __Colorado__
COUNTY OF __Denver__

On **19th** day of **October** in the year **2021** before me, __David Thao__
Notary Public, personally appeared __Stephanie Casillas__, **Attorney in Fact**
of Mortgage Connect Document Solutions, LLC, Attorney in Fact for Freedom Mortgage
Corporation, personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ Notary Signature

**David Thao** Notary Public Printed Name
_____ (exactly as printed on seal)

Notary Public Commission
**September 11th, 2024** Expiration Date

**(Please ensure seal does not overlap any language or print)**

```
DAVID THAO
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID ███████
MY COMMISSION EXPIRES SEPTEMBER 11, 2024
```

# EXHIBIT A

First Parcel:

All the surface or right of soil and in all those certain lots, pieces or parcels of land situate, lying, and being the Borough of Mayfield, County of Lackawanna, and Commonwealth of Pennsylvania, bounded, and described as follows:

BEGINNING at a point on the Northeast corner of Lot No. Ten (10) in Block Number Eighteen,(18) as described and designated in a survey of the property of the Hillside Coal and Iron Company accompanied by a map thereof; thence along the westerly side of May Street, South twenty-nine (29) feet to a point; thence west seventy-five (75') feet to a point; thence, North Eight (8') feet to a point; thence, West seventy-five. (75') feet to a point in the westerly side of said Lot No. Ten (10); thence North along this line, Twenty-one (215 feet; thence East one Hundred Fifty (150') feet along the boundary of Lots No. Ten (10) and Eleven (11) to the point of beginning.

P.T.N. No.

Second Parcel:

ALL the surface or right of soil of and in all those certain lots, pieces or parcels of land situate, lying and being in the Borough of Mayfield, County of Lackawanna and Commonwealth of Pennsylvania, bounded and described as follows:

BEGINNING at the Westerly corner of Lot No 3, Block 140.18, said place of beginning also being in the Southeasterly line of Hill Street; thence in a Southeasterly direction along the Southwesterly line of said Lot No 3, One Hundred Fifty (150') feet to the southerly corner thereof,' thence Southwesterly along the Northwesterly line of Lot No. 10, Block No. 18, May Street, fifty-(50') feet to the easterly corner of Lot No. 1, Hill Street; thence Northwesterly along the Northeasterly line of said Lot No. 1, One Hundred Fifty (150') feet to the Northerly corner thereof, which is in the Southeasterly line-of aforesaid Hill Street; thence Northeasterly along said Hill Street, fifty (50') feet to the place of beginning.

CONTAINING an area of seven thousand five hundred (7500) square feet of land more or less, being Lot No. 2 Block No.18 Hill Street on map of the Hillside Coal & Iron Company.

EXCEPTING AND RESERVING out of the Second Parcel hereof, the Southerly One-Half of Lot No. 2 Block 18 Hill Street, being Twenty-five (25') 'feet in front on Hill Street, the same in rear and One Hundred fifty (150') feet in depth, which was conveyed by Bartek Bilski, et ux. to John Mizianty, et ux.. said Deed being recorded in Lackawanna County in Deed Book578 at Page 325.

P.I.N

THIRD PARCEL:

ALL the surface or right of soil of and all those certain lots, pieces, or parcels of land situate, lying and being in the Borough of Mayfield, County of Lackawanna and Commonwealth of Pennsylvania, bounded and described as follows:

BEING the Southerly One-Half (1/2) of Lot No.2 Block 18, Hill Street and being Twenty-five (25') feet in front on Hill Street, the same in rear and one hundred fifty (150') feet in depth.

P.I.N. NO.

Being the same property as conveyed from Katrina L. Grzech, now by retaking of maiden name know as, Katrina L. Lawler, unmarried to Earl P. Chubb, Jr. and Danielle Y. Davies, holding title as joint tenants with right of survivorship as set forth in Deed Instrument #201805886 dated 04/20/2018, recorded 04/23/2018, Lackawanna County, PENNSYLVANIA.

Page 8